**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0333. LIBERTY COUNTY SCHOOL DISTRICT et al. v. HALLIBURTON.

BRANCH, Judge.

After Laverne Halliburton's contract as a school principal in the Liberty County School District was not renewed for the 2011-2012 academic year, Halliburton sued the District and a number of its officers, including Superintendent Dr. Judy Burton Scherer and seven members of the county school board (collectively, "defendants"), for racial discrimination. Halliburton sought a writ of mandamus, other injunctive relief, damages, and attorney fees. Defendants moved to dismiss on grounds including that defendants were entitled to sovereign and/or qualified immunity. On appeal from the trial court's denial of the motion to dismiss, defendants argue that their motion should have been granted because Halliburton had no right to a renewed contract and

because her claims are barred by sovereign and qualified immunity. We conclude that although the District itself is exempt from suit under sovereign immunity, due to the very early stage of this litigation, it is conceivable that Halliburton could produce facts consistent with her claim that Scherer and/or one or more board members acted with actual malice such that they would not be entitled to qualified immunity. We therefore affirm in part and reverse in part.

The Supreme Court of Georgia has recently reiterated how a trial court should treat a motion to dismiss:

> "A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."

*Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014) (citation omitted), quoting *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). In other words,

2

a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

*Austin*, 294 Ga. at 775 (citation and punctuation omitted). On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo. *Chandler v. Opensided MRI of Atlanta*, 299 Ga. App. 415 (682 SE2d 165) (2009).

On September 26, 2011, Halliburton filed a verified complaint in Liberty County Superior Court alleging that during Scherer's tenure as superintendent of the county school district, Scherer treated Halliburton "differently from similarly situated white employees" in that she "made a recommendation" to the Board "to non-renew" Halliburton's contract as principal for the 2011-2012 school year. The complaint alleged that when the Board voted 4-3 along racial lines not to accept Scherer's recommendation, Scherer "illegally," "without legal authority" and "unilaterally" refused to renew Halliburton's contract. According to the complaint, Scherer took these actions in "retaliation" for Halliburton's complaints to Scherer about the job performance of a white assistant principal, which retaliation violated Halliburton's

3

right to freedom of speech. The complaint also alleged that Scherer had "allowed white employees [of the District] to undermine [Halliburton's] authority and position," had replaced Halliburton with a white principal, and later transferred the white assistant principal rather than declining to renew or terminating that person's contract; that Scherer had discriminated against Halliburton "on the basis of her race" in violation of her constitutional rights; and that Scherer had acted "oppressively, maliciously, corruptly, or without authority of law" and with the intent to injure Halliburton. Finally, the complaint alleged that as a result of defendants' acts, including the board members' ratification of Scherer's acts, Halliburton suffered damages including lost past and future wages, mental anguish, emotional distress, and "physical discomfort."

On October 26, 2011, defendants filed their verified answer, which included a motion to dismiss the District and the individual defendants in their official capacity under sovereign immunity and the individual defendants personally under qualified (also known as "official") immunity because their actions "were discretionary and done in good faith in the performance of [their] official duties." The answer also alleged that "all actions taken by any [d]efendant with respect to [Halliburton's] allegations" were "legitimate, nondiscriminatory, and unprejudiced" and that no

4

defendant had acted with "discriminatory intent." After Halliburton requested a hearing, defendants filed a separate motion to dismiss with a supporting brief arguing for the application of sovereign and qualified immunity. Between December 12 and December 16, 2011, Halliburton served nine discovery requests on the defendants, who immediately moved to stay discovery[1] on the ground that the motion to dismiss "raise[d] exclusively legal issues as to which no discovery is necessary." On February 17, 2012, after a hearing which was not transcribed, the trial court stayed discovery pending its ruling on the motion to dismiss. More than a year later, on August 30, 2013, the trial court denied the motion to dismiss without explanation and lifted the stay on discovery. This appeal followed.

1. Halliburton has moved to transfer this appeal to the Supreme Court of Georgia on the ground that this Court is not authorized to decide an appeal involving relief by writ of mandamus. See Ga. Const. of 1983, Art. VI, Sec. VI, Para. III (5) (giving Supreme Court appellate jurisdiction over "all cases involving extraordinary

---

[1] See OCGA § 9-11-26 (c) (1), (2) ("Upon motion by a party or by the person from whom discovery is sought and for good cause shown," a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "[t]hat the discovery not be had" and "[t]hat the discovery may be had only on specified terms and conditions, including a designation of the time or place[.]"

remedies," which category includes mandamus); *Lamar County v. E. T. Carlyle Co.*, 277 Ga. 690, 692-693 (1) (594 SE2d 335) (2004) (Georgia Supreme Court had exclusive appellate jurisdiction over plaintiff developer's action for declaratory relief and mandamus when the trial court had granted plaintiff mandamus relief). The only issue on this appeal, however, is whether the trial court erred when it denied defendants' motion to dismiss on the grounds of sovereign and qualified immunity. As this trial court did not grant or deny a writ of mandamus, see *Mid Ga. Environmental Mgmt. Group v. Meriwether County*, 277 Ga. 670 (594 SE2d 344) (2004), we conclude that this Court has jurisdiction to entertain this appeal, and we therefore deny Halliburton's motion to transfer. See *City of Tybee Island v. Live Oak Group*, 324 Ga. App. 476, 477, n. 1 (751 SE2d 123) (2013) (Court of Appeals had jurisdiction over appeal concerning only whether trial court erred in its ruling on an inverse condemnation claim even when that claim asked for mandamus relief).

2. Halliburton has also moved to dismiss this appeal as not among the categories of direct appeals authorized by OCGA § 5-6-34 (a). We disagree.

In general, a party seeking to appeal an interlocutory ruling who fails to comply with the interlocutory appeal procedures set forth in OCGA § 5-6-34 (b) deprives this Court of jurisdiction over the appeal. *Bd. of Regents of the Univ. System of Ga. v.*

6

*Canas*, 295 Ga. App. 505, 506 (1) (672 SE2d 471) (2009). "A small class of decisions, however, are excepted" from this rule "by the collateral order doctrine." Id. In order to obtain an appeal on a collateral order, the order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Id. at 507 (citation and punctuation omitted).

Although this trial court's order denying the motion to dismiss did not explain its ruling, the unambiguous posture of this case, including the grounds of sovereign and qualified immunity raised in the answer and repeated in the motion to dismiss, suggests that the trial court's rejection of the defenses of sovereign and qualified immunity was "conclusive" such that defendants were entitled to a direct appeal under the collateral order doctrine. *Eshelman v. Key*, ___ Ga. App. ___ (1) (755 SE2d 926) (2014) (asserting jurisdiction over denial of summary judgment motion asserting defense of qualified immunity to a suit brought by a plaintiff bitten by a police dog that escaped its kennel). Halliburton's motion to dismiss this appeal is denied.

3. Defendants argue that the District and the individual defendants in their official capacities are entitled to sovereign immunity as to Halliburton's claims. We agree.

7

The sovereign immunity of the state and its departments and agencies "can be waived only by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." *Wellborn v. DeKalb County School Dist.*, 227 Ga. App. 377, 379 (4) (489 SE2d 345) (1997), citing Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); see also *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 602 (2) (755 SE2d 184) (2014) ("sovereign immunity [can] only be waived by the General Assembly"). Because the Liberty County School District is a political subdivision of the State, *Crisp County School System v. Brown*, 226 Ga. App. 800 (1) (487 SE2d 512) (1997), the District "is vested with sovereign immunity unless such immunity is waived" by virtue of the same constitutional provision. *Wellborn*, 277 Ga. App. at 379 (4) (citations omitted); see also OCGA § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute"). Specifically, "[t]he Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for the torts of its officers and employees, but it expressly excludes school districts from the waiver." *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294-295 (454 SE2d 149) (1995), citing OCGA § 50-21-22 (5) (defining "State" for purposes of the Georgia Tort Claims Act as including "any of its offices, agencies, authorities, departments commissions,

8

boards, divisions and institutions," but excluding "counties, municipalities, *school districts*," and "other units of local government") (emphasis supplied).

According to Halliburton herself, the gravamen of her complaint is her request for "reinstatement" pursuant to a renewed contract as well as "back pay" and "attorney fees." Our Constitution waives sovereign immunity in "any action ex contractu for the breach of any written contract." Ga. Const. of 1983, Art. I, Sec. II, Para. IX (c). But this constitutionally sanctioned waiver cannot apply when Halliburton is seeking a new contract that the District refused to issue. See *Bd. of Regents of Univ. System of Ga. v. Ruff*, 315 Ga. App. 452, 455 (726 SE2d 451) (2012) (no waiver of sovereign immunity when plaintiff could not show that he entered into a written contract with a university board of regents).

Even if Halliburton seeks to accomplish her goal of obtaining a new contract by means of injunctive relief, our Supreme Court has recently clarified that a request for injunctive relief to restrain an allegedly illegal act does not provide any exception to the fundamental rule that sovereign immunity "*can only be waived by an Act of the General Assembly* which specifically provides that sovereign immunity is waived and the extent of such waiver." *Center for a Sustainable Coast*, 294 Ga. at 598 (2), overruling *IBM v. Evans*, 265 Ga. 215 (453 SE2d 706) (1995) (citation and

9

punctuation omitted; emphasis in original). It is also clear from Halliburton's complaint that she impermissibly seeks "to bind the District's fiscal discretion going forward" by forcing it to issue her a renewed contract. *DeKalb School Dist. v. Gold*, 318 Ga. App. 633, 639-640 (1) (734 SE2d 466) (2012) (trial court erred in failing to dismiss teachers' claim for "a declaration as to [a school district's] budgetary obligations").[2]

As this Court has noted, "a primary purpose of the doctrine of sovereign immunity is the protection of the public purse." Id. (citation and punctuation omitted). And "[a] waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." *Ruff*, 315 Ga. App. at 456 (footnote omitted). In the absence of any showing that the legislature has waived the sovereign immunity of school

---

[2] As to any possible federal constitutional claims, the complaint makes no reference to 24 USC § 1983. To the extent Halliburton contends that she was deprived of her constitutional rights pursuant to § 1983, she has failed to allege that any policy or custom of the District caused the deprivation of her constitutional rights. Thus any federal constitutional claims predicated on § 1983 should have been dismissed. See *King v. Pioneer Regional Educational Svc. Agency*, 301 Ga. App. 547, 552 (1) (688 SE2d 7) (2009) (although "municipalities and other local governmental entities are included among those persons to whom § 1983 applies," such entities "may not be held liable on a respondeat superior theory," but may be held liable only when "execution of a government's policy or custom inflicts the injury" suffered), citing *Monell v. Dept. of Social Svcs.*, 436 U. S. 658, 690 (II) (98 SCt 2018, 56 LE2d 611) (1978).

districts in cases involving the issuance or non-issuance of teacher contracts, we conclude that the District itself is immune from Halliburton's suit and that the trial court should have granted the District's motion to dismiss on this basis. *Coffee County*, 216 Ga. App. at 296 (reversing denial of summary judgment when plaintiff had not pointed to any "legislative act specifically providing that the sovereign immunity of [a] school district is waived and the extent of such waiver").

Further, because "[s]uits against public employees in their official capacities are in reality suits against the state," *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (punctuation and footnote omitted), such employees are also entitled to sovereign immunity when they are sued in their official capacities. Id. The trial court thus also erred when it denied the motion to dismiss as to Scherer and the board members in their official capacities. Id.

4. Defendants also argue that Scherer and the Board members are entitled at this stage of the proceedings to qualified immunity concerning Halliburton's claim for unlawful discrimination against them in their individual capacities. We disagree.

Under the Georgia Constitution, and except as provided by the Georgia Tort Claims Act,

11

all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages *if they act with actual malice or with actual intent to cause injury in the performance of their official functions.*

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). A suit against a public officer acting in his official capacity "will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty." *Reece v. Turner*, 284 Ga. App. 282, 285 (1) (643 SE2d 814) (2007) (citations and punctuation omitted).[3] "In other words, public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." Id.

Defendants correctly point out that the process of issuing a contract to a school principal involves two steps: a "recommendation" to do so by the "executive officer"

---

[3] As our Supreme Court has explained, "a ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Austin*, 294 Ga. at 774 (citation and punctuation omitted).

12

(here, superintendent Scherer), and a decision by the school board, pursuant to such a recommendation, to issue a contract. OCGA § 20-2-211 (a) ("All teachers, principals, other certificated professional personnel, and other personnel of a local unit of administration shall be employed and assigned by its governing board on the recommendation of its executive officer"); see also *Gordon v. Dooly County School Dist.*, Case No. 5:04CV124, 2005 WL 3560659 *3 (III) (M.D. Ga., Dec. 28, 2005) (under OCGA § 20-2-211 (a), a board of education "is authorized to take employment action with respect to District personnel only on the recommendation of the Superintendent," and has "no independent authority to hire, fire, or otherwise assign" personnel). As the two-step process outlined in OCGA § 2-2-211 (a) suggests, however, and as this Court has held, "the making of decisions regarding the supervision of students and school personnel is a discretionary function requiring personal deliberation and judgment." *Reece*, 284 Ga. App. at 285 (1) (supervision of teacher was discretionary such that school district employees were immune from suit by a student who was molested by that teacher); see also *Leake v. Murphy*, 274 Ga. App. 219, 225 (3) (617 SE2d 575 (2005) (supervision of students was discretionary such that defendant superintendent and board members were immune from suit).

13

Halliburton's complaint alleges that Scherer's and/or the Board's decision not to renew Halliburton's contract was undertaken with an intent to discriminate against her on the basis of her race – or, in other words, that one or more of these individual defendants acted with "a deliberate intention to do wrong." *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999) (citation and punctuation omitted); see also, e.g., *Simpson v. State*, 218 Ga. 337, 338 (127 SE2d 907) (1962) (the equal protection clause of the Georgia Constitution "demands uniformity and impartiality and hence forbids discrimination"). Even taking account of the complaint's allegation that the individual defendants acted "maliciously," however, any decision by Scherer and/or any Board member not to renew Halliburton's contract was a discretionary act for which Halliburton can recover only if she proves that one of these actors made that decision with "'actual malice or an actual intent to cause injury.'" *Reece*, 284 Ga. App. at 440 (2), quoting *Harper v. Patterson*, 270 Ga. App. 437, 440 (2) (606 SE2d 887) (2004).

No discovery has been completed in this case, and "it cannot be said that the allegations of the complaint disclose with certainty that [Halliburton] would not be entitled to relief under *any* state of provable facts in support" of her complaint, which alleges that the individual defendants acted with actual malice when they decided not

14

to renew her contract based on her race. *Austin*, 294 Ga. at 775 (citation omitted; emphasis in original). As a result, questions of this complaint's evidentiary sufficiency must await summary judgment. The trial court therefore did not err when it denied the individual defendants' motion to dismiss Halliburton's suit against them in their individual capacities. Id.; compare *Chisolm v. Tippens*, 289 Ga. App. 757, 760-762 (658 SE2d 147) (2008) (trial court did not err in granting defendant school district and officials' motion to dismiss when father's pro se claims including harassment, cruelty, and discrimination arising from officials' refusal to set up conferences, to include father in parent-teacher association, or to place daughter in a specific class failed to allege "malicious, wilful, or wanton conduct necessary to overcome defendants' claim of immunity").

5. Defendants assert that the trial court erred when it failed to dismiss Halliburton's prayer for mandamus relief compelling "the defendants," without distinguishing between the District and the individual defendants, to provide Halliburton with a hearing and to issue a contract to her. We agree.

OCGA § 9-6-20 provides in relevant part:

All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to

15

compel a due performance if there is no other specific legal remedy for the legal rights[.]

As we have suggested in Division 1, we would transfer this case to our Supreme Court if Halliburton's complaint were "capable of being construed" so as to implicate a right to mandamus relief. *City of Dalton v. Smith*, 158 Ga. App. 356, 359 (280 SE2d 138) (1981). Even in the framework set out by Halliburton's complaint, however, no law has been cited by Halliburton, and we have found none, suggesting that Halliburton had a right to a hearing on her non-renewal or that the individual defendants' decisions not to renew Halliburton's contract and/or to do so without a hearing could be anything but discretionary ones. See *Dalton City Bd. of Ed. v. Smith*, 256 Ga. 394, 395 (1) (349 SE2d 458) (1986) (when petitioners for writ of mandamus had not established "any right to a school board hearing" on the subject of the non-renewal of a teacher's contract, mandamus relief was not appropriate). Being a remedy "'designed to compel the doing of ministerial acts,'" mandamus is "'not an appropriate remedy to compel the exercise of official discretion.'" *Lowe v. State*, 267 Ga. 754, 756 (2) (482 SE2d 344) (1997), quoting *Speedway Grading Corp. v. Barrow County Bd. of Commrs.*, 258 Ga. 693, 695 (1) (373 SE2d 205) (1988).

With the caveat that no mandamus remedy is available to Halliburton, we affirm the trial court's denial of the motion to dismiss as to Scherer and the school board members in their individual capacities and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and Boggs, J., concur.*